# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Erik Joshua Esparza (#153385), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15 C 7307 |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| Damien Cantona, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Erik Joshua Esparza, a prisoner at the Big Muddy River Correctional Center, filed this 42 U.S.C. § 1983 action against Aurora Police Officer Damien Cantona. Esparza asserts that Cantona used excessive force when arresting him on March 6, 2015. Currently before the Court are Cantona's motion for summary judgment and Esparza's motion to strike the motion for summary judgment, which the Court construes as his response. For the reasons stated herein, the Court denies Cantona's motion for summary judgment.

## FACTS

On March 6, 2015, in Aurora, Illinois, Esparza was the driver of a car rented by his mother. (Dkt. 50, ¶ 1; Dkt. 62 ¶ 1.) Esparza did not have a driver's license. (*Id.*) Several of Esparza's friends were with him in the car. (*Id.* at ¶ 2.) Shortly after Esparza turned right on North Street from Hill Street, Officer Villanueva (not a defendant) began pursuing Esparza, who continued driving even though he knew an officer wanted him to stop. (*Id.* at ¶¶ 3-4.) Esparza drove with Villanueva pursuing him—either for five blocks (according to Cantona) or for one block (according to

Esparza) before he pulled into the driveway of his friend's house, and exited the car. (*Id.* at ¶ 5.)

At this point of the facts, the parties' account of the events significantly diverge. According to Officer Cantona, Esparza exited the car and, once he saw Officer Villanueva, he hopped a fence and began running. (Dkt. 50 at ¶ 5.)

According to Esparza: Villanueva drove past the driveway where Esparza stopped; the officer parked her car on Second Street; Esparza walked to another friend's house on Denver Avenue; upon arriving at the friend's house, Esparza saw a plain-clothed man (Cantona) exit an unmarked van with a weapon drawn and aimed at Esparza, at which time he hopped a fence and ran out of fear. (Dkt. 62 at ¶ 5.) After Esparza hopped the fence, Cantina drove the van to Anderson Street, blocking Esparza's path. (*Id.* at ¶ 5.) Cantona directed him to lie on the ground while pointing a gun at him from within the van. Esparza complied. (*Id.* at ¶ 6.) Esparza lay face down in a driveway. Cantona handcuffed him while he was on the ground. (Dkts. 50 and 62 at ¶ 8.)

The parties both acknowledge Esparza's deposition testimony describing Cantona's conduct while Esparza was lying on the ground.

> He [Cantona] gets out of his car, runs towards me, pushes – jumps on me with his knee, handcuffs me, and strikes me multiple times yelling, you want to run little bitch. In the meantime, he's still striking. A couple seconds, minutes [later], he gets me up, and then passes me off to Officer Gomez.

(Dkts. 50 and 62, ¶ 9, quoting Pl. Dep. at pg. 20.) According to Esparza, Cantona grabbed him by the neck and struck him with a closed fist four or five times

2

everywhere in the face—"my cheeks, my jaw, my face." (*Id.* at ¶¶ 10, 11, quoting Pl. Dep. at 33.) Esparza states Cantona hit him on both cheeks, but the punches caused no cuts or bleeding. (*Id.* at ¶ 10.)

According to Cantona's affidavit, he approached Esparza while he lay face down in the driveway. Cantona placed his right knee on Esparza's shoulder and placed Esparza's right arm behind his back. Cantona then placed his knee on Esparza's left shoulder and put his left arm behind his back. (Dkt. 50 at ¶ 14.) Attached to Cantona's affidavit are photographs of Cantona demonstrating these maneuvers. (Dkt. 51-2, pgs. 5-6.) Cantona denies punching Esparza in the face. (Dkt. 50 at ¶ 14.)

Shortly after Esparza was handcuffed, Officer Marco Gomez arrived. (Dkt. 50 at ¶ 15.) Gomez recognized Esparza. (*Id.*) According to Gomez's affidavit, he saw no injuries on Esparza when the officers got him to his feet. (*Id.* at ¶ 16.) Gomez also states Esparza complained of no injuries following the arrest. (*Id.*)

Esparza was placed in a police vehicle and taken to an Aurora police station where he was booked. (*Id.* at ¶ 17.) The booking process included taking a photograph of Esparza. (*Id.*; *see also* Dkt. 51-2, pg.3 (3/6/15 photo.)) The photograph shows a dark mark on Esparza's left cheek, which Cantona contends is a smudge of dirt or other substance from Esparza lying face down in a driveway. (Dkt. 51-2, pg. 3; Dkt. 50 at ¶ 18.) Esparza remained at the Aurora police station overnight and was transferred the next day (March 7, 2015) to the Kane County Jail, where additional photographs (Esparza's mug shots) were taken. (Dkt. 50 at ¶¶ 19, 20, citing Dkt. 51-4, pg. 2

(Esparza's 3/7/15 mug shots)). Cantona contends that the Kane County Jail's mug shots show no marks, bruises, cuts, or abrasions. (Dkt. 50 at ¶ 21.)

According to Esparza's affidavit, he asked the intake officer at the Aurora Police Station to take pictures of his injuries. (Dkt. 62, pg. 16.) "The intake officer then informed the plaintiff that he could not take photographic evidence but could document the injuries on paper." (*Id.*) An Aurora Police Department Receiving – Screening Form from 3/6/15 states that Esparza had "apparent bruising both cheekbones." (*Id.* at 7.) Another page depicts body diagrams and contains circles around both cheeks with the word "bruises" next to the circles. (*Id.* at 8.) Esparza states that, while he was in the bullpen cell, he lay on his stomach on the cold metal bed frame pressing his cheeks against the metal to numb the pain and reduce the swelling. (*Id.* at 16.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Jajeh*, 678 F.3d at 566. The Court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "The Court [typically] may not weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v.*

*UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *see also Tolan*, 134 S. Ct. at 1866. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that he or she is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond his initial pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010); *see also Scott*, 550 U.S. at 380 ("'[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (citation omitted).

In addition to following the requirements of Fed. R. Civ. P. 56, parties seeking summary judgment must include with their motions a Statement of Material Facts citing to the parts of the record establishing that there are no genuine disputed issues of material facts. *See* N.D. Ill. Local Rule 56.1. The moving party's Rule 56.1 Statement and the non-moving party's response to it provide the background facts by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). In addition to responding to the moving party's Local Rule 56.1 factual statements, the non-moving party may submit his own factual assertions with citations to the record demonstrating that summary judgment should be denied. Local Rule 56.1(b)(3)(C). The failure of a party to properly respond to an opponent's statement of material fact may result in the Court considering that factual statement true. Local Rule 56.1(a)(3)(C) and (b)(3)(C).

In this case, Cantona submitted the following materials with his summary judgment motion: a Rule 56.1 Statement, Esparza's deposition, Cantona's affidavit, Officer Marco Gomez's affidavit, and photographs of Esparza taken the day of arrest and the next day, as well as photographs demonstrating the maneuvers Cantona allegedly used when arresting Esparza. (Dkt. 51.) Esparza responded to Cantona's Rule 56.1 factual assertions and includes as exhibits an Aurora Police Department screening form and an "Injuries and Identification Marks on Admission" sheet, both

describing the marks and injuries Esparza had when arriving at the police station. (Dkt. 62.)

After the close of the briefing schedule, Esparza filed another motion to strike Cantona's summary judgment motion. Esparza's second motion to strike, as noted by Cantona, essentially repeats Esparza's arguments stated in his first motion to strike. The Court thus deems the second motion strike unnecessary, but advises Esparza that, if he seeks to file an additional response to a pleading, he should seek leave of court to do so.

## DISCUSSION

"A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). "The reasonableness standard is incapable 'of precise definition or mechanical application,'" and "depends on the totality of the facts and circumstances known to the officer at the time the force is applied." *Abbott*, 705 F.3d at 724 (internal citation omitted). "[O]nly if . . . the officer used greater force than was reasonably necessary to make the arrest'" is his "use of force [] unreasonable from a constitutional point of view." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009).

In the instant case, Officer Cantona acknowledges that his and Esparza's versions differ as to what occurred in the driveway when Cantona secured and

handcuffed Esparza—Cantona's version describes a reasonable use of force; Esparza's describes an unreasonable use of force. Relying on *Scott*, 550 U.S. at 380, Cantona contends that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." According to Cantona, comparing photos of Esparza's face taken at the police station on the day of the arrest with photos taken the following day at the Kane County Jail clearly establish that he was not beaten, or at least not in the way Esparza states. Cantona contends that, if the dark mark on Esparza's cheek in the 3/6/15 photo was a bruise, the bruise would be darker the following day: "Anybody who has played sports or raised children know[s] that when injuries like what Plaintiff describes happen, they always look a lot worse the next day." (Dkt. 52, pg. 6.) The Court notes that the photo taken the day after the arrest shows a mark on Esparza's cheek much smaller than the mark in the photo from the day before. (Compare Dkt. 51-2, pg. 4 with 51-4, pg. 2.) The pictures, however, do not warrant summary judgment.

In *Scott*, the plaintiff sued an officer for use of excessive force during a high speed chase where the officer bumped the plaintiff's car in an attempt to make the plaintiff's car spin to a stop. The maneuver, however, caused the plaintiff's car to travel off the road down an embankment and crash, rendering the plaintiff a quadriplegic. *Scott*, 550 U.S. at 375. Both the district court and the Eleventh Circuit found triable issues of material facts and denied summary judgment for the officer.

The Supreme Court reversed. Noting that a videotape captured much of the chase, the Court concluded that the plaintiff's "version of events [wa]s so utterly discredited by the record that no reasonable jury could have believed him." *Id.* at 380.

Cantona states that more than 2,500 cases cite to *Scott*'s language about summary judgment evidence blatantly contradicting one side's story. He cites, however, to only two cases: *Boyd v. Pollard*, 621 Fed. Appx. 352 (7th Cir. 2015), and *Lust v. Razzino*, No. 08 C 7346, 2010 WL 845942 (N.D. Ill. March 3, 2010). In *Boyd*, a prisoner's transfer between cells was videotaped. Although the entire transfer was not filmed, the conduct of the parties that was filmed clearly belied the plaintiff's version of events. Boyd alleged that officers body-slammed him and beat him outside the view of cameras, which was unbelievable by any rational juror "given the professional behavior of the guards [depicted on the video] and minor injury sustained by Boyd [a small cut above the eye]." *Id.* at 355.

In *Lust*, the plaintiff alleged that officers beat him after he tripped and fell to the ground while fleeing. Lust specifically asserted that a Latino officer kicked him several times in the shoulder and that an African American officer kicked him and punched him three times on his left chin. *See Lust*, 2010 WL 845942, at *3. Uncontroverted evidence in the record, however, revealed that none of the officers involved in the arrest were Latino or African American, and medical records from an emergency room visit several days after the arrest noted no injuries to the plaintiff's head, shoulder, or chin. *Id.* at *4. Additionally, following the arrest, Lust agreed to participate in a lineup later that day. *Id.* at **2-3. The court in *Lust* concluded that

the plaintiff's "version of the facts '[wa]s so utterly discredited by the record that no reasonable jury could have believed him.'" *Id.* at \*7 (quoting *Scott*, 550 U.S. at 380). "In particular, despite unrefuted evidence to the contrary, Lust claims that an African-American police officer beat and kicked him in the head and that a Latino police officer kicked his shoulder. Moreover, despite Lust's claims of being beaten in the head and shoulder, his medical records and the lineup photograph . . . show no evidence of any head or shoulder injuries." *Id.*

Unlike the evidence in *Boyd*, *Lust*, and *Scott*, the record in Esparza's case contains evidence supporting his version of the arrest. The photographs Cantona relies upon to establish that Esparza was not beaten—one taken the day of the arrest, the other taken the following day—clearly show a mark on Esparza's left cheek. Cantona contends that the mark was most likely oil, dirt, or other substance with which Esparza came into contact when lying face down in the driveway. But Cantona and Gomez's affidavits do not note that Esparza had a smudge on his face when he was lifted to his feet after the arrest. Cantona's contention that the mark would be darker the next day if it were a bruise is plausible. But it is also plausible that the mark was caused by Cantona striking Esparza and Esparza's placement of his cheek on a cold metal bedframe in his cell helped reduce the bruise. The photographs are as consistent with Esparza's version as they are with Cantona's. Furthermore, the Aurora Police Department Receiving Screening Form—which Cantona does not address—notes "apparent bruises [to] both [of Esparza's] cheekbones" and both cheeks are circled on the Injuries and Identification Marks diagram. (Dkt. 62, pg.7-8.)

10

This Court therefore cannot conclude, as the *Scott*, *Boyd*, and *Lust* courts did, that "[Esparza]'s version of the facts 'is so utterly discredited by the record that no reasonable jury could [ ] believe[] him.'" *Lust*, 2010 WL 845942, at *7 (quoting *Scott*, 550 U.S. at 380). Accordingly, Cantona's motion for summary judgment is denied.

## CONCLUSION

For the reasons stated above, the Court denies Defendant's motion for summary judgment [49]. Plaintiff's first motion to strike Defendant's summary judgment motion [61] is granted insofar as the Court accepts it as his response to Defendant's motion. Plaintiff's second motion to strike Defendant's motion for summary judgment [65] is denied as unnecessary as the motion provides no information not already included in Plaintiff's first motion to strike. This case is set for a status on August 23, 2017 at 10:00 a.m. Defendant is responsible for Plaintiff's participation by telephone. At the status, the parties should be prepared to address whether they are interested in attempting to settle this case or whether they seek to proceed with additional discovery. Plaintiff's motion for the recruitment of counsel [71] is taken under advisement.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:** August 10, 2017

**HON. MARIA VALDEZ**
**United States Magistrate**